**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| ROGELIO HINOJOSA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 1:25-cv-00740 |
| § | |
| STUDENT TRANSPORTATION OF § | |
| AMERICA, INC. D.B.A. GOLDSTAR § | |
| TRANSIT INC. § | |
| § | **JURY TRIAL DEMANDED** |
| Defendant. § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

This is an action brought under Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA") and Chapter 21 of the Texas Labor Code to correct the unlawful employment practices of Defendant and provide appropriate relief to Mr. Rogelio Hinojosa.

**INTRODUCTION**

1. On June 8, 2023, Rogelio Hinojosa ("Plaintiff"), a qualified and experienced school bus driver, was denied employment by GoldStar Transit ("GST") because he is deaf. Despite his exemplary driving record, valid Class B commercial driver's license, required certifications, and proven experience safely transporting children, GST refused to hire or even interview Mr. Hinojosa.

2. The ADA and Chapter 21 of the Texas Labor Code exist precisely to prevent this type of discrimination. Deaf individuals can—and do—safely operate school buses and many other kinds of commercial vehicles across the country. Mr. Hinojosa had successfully performed these same duties without incident for years prior to applying to GST, demonstrating that his hearing

impairment presents no barrier to the safe transportation of students, with or without accommodation.

3. In sum, Plaintiff brings this lawsuit to enforce his rights to reasonable accommodations in pursuing his chosen profession enshrined in federal and state law.

## JURISDICTION

4. Jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiff's claims involve federal questions arising under the ADA, a law of the United States.

## VENUE

5. Venue is proper with this Court pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff's claims arose out of "events and omissions" that substantially occurred in this District.

## PARTIES

6. Mr. Rogelio Hinojosa ("Plaintiff") is a citizen of the State of Texas who resides with his wife, Kristy, and children at 2773A North Main Street, Bastrop, Texas 78602.

7. Defendant Student Transportation of America, Inc., d.b.a. GoldStar Transit, Inc, ("GST") is a company that runs transportation systems for various school districts in Texas. Its Bastrop, Texas office is located at 1081 Lovers Lane, Bastrop, Texas 78602. It is amenable to service in this State through its registered agent Cogency Global, Inc., whose address is 1601 Elm Street, Suite 4360, Dallas, Texas 75201.

8. At all relevant times, Defendant has been an employer engaged in an industry affecting commerce under the ADA, 42 U.S.C. § 12111(5) & (7).

9. At all relevant times, Defendant has been a covered entity under the ADA, 42 U.S.C. § 12111(2).

10. Student Transportation of America, Inc., doing business as GST, is a nationwide company that serves more than 325 school districts and operates over twenty-two thousand vehicles. In addition to Bastrop, GST has offices throughout Texas in Fort Worth, Little Elm, Navasota, Terrell, White Settlement, Burleson, Lockhart, Missouri City, Austin, Boyd, Lago Vista, Kennedale, and Houston. GST both services school districts and rents its buses out as a charter service for private events.

## FACTS

### I. Meet Rogelio Hinojosa

11. Mr. Hinojosa is a U.S. citizen who was born on November 21, 1977 in Matamoros, Tamaulipas, Mexico.

12. When he was about two years old, his parents realized he was not responding to them as expected. Later audiograms would reveal that he has severe hearing loss in both ears, substantially impacting his abilities to hear and speak.

13. After learning of their child's disability, Mr. Hinojosa's parents decided to move their family to the U.S. to ensure a life of opportunity for their son. They sought robust educational services and the kind of upward mobility available to deaf persons only in this country.

14. In Brownsville, Texas, Mr. Hinojosa attended schools with hearing children accompanied by an interpreter. In school, he learned both English and American Sign Language.

15. Mr. Hinojosa's primary language is American Sign Language (ASL), although he also reads and writes in English. He can and does communicate through the use of his own speech, which is intelligible to most hearing people in most circumstances.

16. Mr. Hinojosa also sometimes uses hearing aids to facilitate communication.

17. Mr. Hinojosa often supplements these communication strategies often by using speech-to-text on his phone, which creates a real-time running transcript of the speech of hearing people speaking English. He is adept at reading these messages quickly in conversation.

18. After graduating high school, Mr. Hinojosa attended the Transitional Program at the Texas School for the Deaf ("TSD"), studied at Austin Community College, and began working. Although his disability would qualify him for federal disability benefits via Supplemental Security Income, Mr. Hinojosa has never applied for these benefits, instead choosing to work hard for decades.

19. For a number of years, Mr. Hinojosa worked within the deaf community by fitting others for hearing aids.

20. As is true for many deaf individuals working in deaf-only environments, Mr. Hinojosa is constantly on the lookout for new and challenging opportunities for employment that could increase his chances of career advancement outside of TSD and the deaf community.

21. Therefore, for over twenty years, he has worked at various jobs in the service industry—including positions requiring driving—to strengthen his abilities to communicate with hearing co-workers and hearing customers, and to ensure his future ability to advance in a hearing world.

22. Mr. Hinojosa's wife, Kristy, who is hearing, is also a school bus driver. Together, the two of them have worked toward upward mobility. While commuting to Austin from their home in Bastrop, they have raised seven children, three of whom have now grown up and left the nest. They dream of being able to work together in Bastrop, and live affordably and simply with their family, without the time and expense of daily commuting to Austin.

23. The couple recently adopted a son who is also deaf. Just as Mr. Hinojosa's parents strived to give him opportunities when they moved to the U.S. with a young deaf son, he and Kristy are now saving to support their adopted son's goal of attending college and becoming an electrical engineer.

## II. History of Driving

24. Mr. Hinojosa began his employment as a professional driver for Domino's in 2015. Then, in 2017, he began working as a Bus Monitor at TSD, where he ensured the safety and comfort of students on their way to and from school. About five years ago, he began working as a school bus driver at TSD, and he has driven school buses serving TSD ever since.

25. Throughout these hours of driving as his main occupation, he has never been in a motor accident. In fact, Mr. Hinojosa has never caused an accident in his private life as a driver, either.

26. Mr. Hinojosa holds a Class B Commercial Driver's License (Texas Driver's License No. 13236289) and has been deemed medically fit to operate commercial motor vehicles.

27. Pursuant to Section 14.12 of the Texas Administrative Code, all school bus drivers are required to be physically qualified, and must keep in their possession a medical examiner's certificate of their physical qualification. 37 TEX. ADMIN. CODE § 14.12 (2025). In compliance with that rule, Mr. Hinojosa obtained a Medical Examiner's Certificate and a Medical Waiver for hearing (Certificate Number: 00981) from the Texas Department of State Health Services' Medical Advisory Board, which establishes his eligibility to operate a school bus within the State of Texas.

28. Although Mr. Hinojosa frequently operates a school bus safely, on time, and without any accommodations, he will sometimes utilize various communication tools to ensure

the confidence of hearing people in his driving, and to more easily communicate with students, parents, and hearing staff.

29. For example, Mr. Hinojosa is readily able to get students' attention on his TSD bus, which sometimes transports children who have not yet developed signed language or who use speech to communicate, through a number of non-verbal communication methods, including stomping (which is audible to those who have residual hearing and felt by those who do not) and by using special flashing lights to communicate basic and common messages.

30. Expressively, Mr. Hinojosa sometimes uses technology as simple as a whiteboard and marker to communicate with administration and hearing parents, in addition to his speech.

31. Receptively, Mr. Hinojosa is extremely adept at using speech-to-text in real time to read verbal messages in situations in which writing notes would be inconvenient for the speaking party.

32. TSD provides smart phones to its bus drivers. The use of these phones is extremely helpful for the real-time voice-to-text transcription mentioned above, which facilitates communication between hearing and deaf people without an interpreter.

33. In part because the use of phones to receive messages is pervasive among drivers of commercial vehicles, TSD directs its drivers to pull over and respond to urgent messages at stops. Thus, his employer's allowing one or more "communication stops" is another simple accommodation that enhances both communication and safety for both drivers and passengers.

34. TSD also uses tablets that provide even more security to parents, reducing the need for driver-to-parent verbal communication. Using a tablet, Mr. Hinojosa checks in every student as he picks them up, checking them out as he drops them off. The tablet has GPS functionality,

allowing parents and administration to track the students' location whenever they are on the bus. Allowing the use of this simple technology is yet another example of a potential accommodation.

35. Finally, many school districts assign bus monitors to certain buses on certain routes. Sometimes this is necessitated by the special education needs of a particular passenger. The use of a monitor to assist Mr. Hinojosa in communication with hearing students—assuming for the moment that it would be necessary—is therefore yet another potential accommodation. Indeed, the use of otherwise-required support staff to address the needs of an employee with a disability— here, the use of a monitor to meet specific students' needs as well as to support the driver—is quite common as an accommodation strategy in a variety of contexts.

III.   Mr. Hinojosa's Efforts to Apply

36. Mr. Hinojosa was interested in working for GST because he wanted access to the employment opportunities and career advancement that working outside of the deaf community can provide, and because he wanted to work much closer to his family. He and his wife were struggling to raise their children while both working, and had begun the process of adopting a child in need, who was deaf. The couple decided that it was extremely important to them to be able to focus on the needs of their children by finding work locally to eliminate their commutes.

37. Kristy had previously worked for the Defendant for two separate periods totaling several years. They decided to apply together for employment.

38. In May of 2023, Mr. Hinojosa filled out an online questionnaire related to a bus driver position with GST working in Bastrop.

39. On or about May 24, 2023, Mr. Hinojosa received an email from Derek Hay, Area General Manager. Mr. Hay asked Mr. Hinojosa when he would be available for an interview. On the same day, Mr. Hay called Mr. Hinojosa, who responded via text that he was still interested in

the bus driver position. Mr. Hay stated that JW Barrett, the General Manager at Bastrop, would reach out to Kristy and Mr. Hinojosa.

40. On or about June 1, 2023, Mr. Hinojosa texted Mr. Hay to tell him that he had not heard back from Mr. Barrett and to inform him that he and Kristy would be available to apply the next Friday. Mr. Hay responded with Mr. Barrett's phone number and instructed Mr. Hinojosa to contact Mr. Barrett.

41. Mr. Hinojosa contacted Mr. Barrett on or about June 1, 2023, and stated he wished to apply for a position with the Defendant in person.

42. On or about June 5, 2023, Mr. Hinojosa and Kristy visited the Defendant's Bastrop location.

43. They first said hello to Mr. Barrett. During this interaction, Mr. Hinojosa vocally greeted Mr. Barrett. He then used speech-to-text on his phone to gain access to Mr. Barrett's words.

44. After meeting Mr. Barrett, both Kristy and Mr. Hinojosa very briefly interacted with Tiffany Grant, the Operations Manager at Bastrop.

45. Despite his efforts in filling out the online questionnaire and texting various GST employees before visiting the Bastrop location, Mr. Hinojosa was never afforded an interview.

46. Further, although Mr. Hinojosa's deafness was obvious, GST made no attempt to hire a sign language interpreter or to otherwise accommodate his disability during their interactions.

47. To be clear, at no time did Kristy volunteer her services as a translator or interpreter for Mr. Hinojosa. She is not a certified translator or interpreter. While she can communicate with her husband, she is not qualified to interpret for Mr. Hinojosa at work.

48.     Also on this day, Mr. Barrett gave Mr. Hinojosa various forms to fill out and sign, including a paper application, a memo on work hours, a code of conduct and acceptable use policy, a direct deposit form, a background check form and disclosure authorization, and a W-4 form.

49.     Mr. Hinojosa completed all the paperwork he was given by the Defendant, indicating that he desired a full-time position in Bastrop, that he had had at least three years of driving experience, and that he did not have any failed drug tests, license suspensions, or convictions related to dangerous driving.

IV.     *Application Repeatedly Refused*

50.     Mr. Hinojosa waited at the Defendant's location in Bastrop on June 5 for nearly an hour to submit his application, but Defendant eventually communicated that it would not be accepted at that time.

51.     Undeterred, Mr. Hinojosa and his wife returned the next day, on June 6, 2023. Defendant once again refused to accept Mr. Hinojosa's completed application.

V.     *Written Request for Accommodation*

52.     Concerned, Mr. Hinojosa sent an email to Mr. Barrett on June 6, 2023, proposing a list of potential reasonable accommodations. The proposal included requests that: 1) Mr. Hinojosa be allowed to check his phone while stopped for work communication; 2) a small amount of extra time be permitted at certain stops if necessary; 3) interpreters be used during meetings and other important communication events; 4) the use of text and email be allowed to enable him to gain access to verbal communication; 5) someone be assigned to ride with him for a few days if he were to be asked to take over a new route; and 6) he be allowed to print information in advance, and to use a dry erase board where appropriate, to enhance communication with hearing people on the job.

VI.   *Summarily Rejected*

53.   Defendant rebuffed Mr. Hinojosa's attempts to engage in the interactive process. First of all, it gave no response to the invitation to collaborate, posing no questions about the listed ideas. It did not even acknowledge receipt.

54.   Not only did GST refuse to respond to the accommodation request, but it also then decided not to afford Mr. Hinojosa an interview.

55.   Therefore, GST asked no questions about a specific direct threat posed by Mr. Hinojosa's disability, let alone inquire into his driving history. There is no threat, and Mr. Hinojosa has shown—through many years of safe driving and working with hearing people—that he is more than capable of doing the job.

56.   Had Defendant engaged in a good-faith determination of the accommodations that would be needed for Mr. Hinojosa—or even set up an interview—it would have learned of Mr. Hinojosa's facility in speaking with members of the hearing community and his perception of sound when using his hearing aids. Defendants also would have learned about the effective nonverbal methods of communication Mr. Hinojosa has developed.

57.   Indeed, Defendant did not even call Mr. Hinojosa to inform him of its employment decision. Instead, on June 8, they called Kristy to inform her that Mr. Hinojosa would not be hired because he is deaf. Had Defendant attempted to call Mr. Hinojosa himself, it would have learned about one of the numerous accommodations Mr. Hinojosa regularly utilizes to maximize his ability to participate as independent person within a hearing world, called VRS or "video relay services." This is a free service that allows a hearing person to connect with a deaf person on the phone through an interpreter that signs to the deaf party. Requiring no training, VRS allows the hearing

party to call the deaf person easily and directly, and it is used daily by millions of people with disabilities across the world to communicate naturally and effortlessly with hearing people.

58. GST used this single call to Mr. Hinojosa's wife as a way to relay a decision against hiring that had already been made, and to reiterate that decision multiple times. At no time during this call did GST share information that would have been helpful to the Hinojosas in understanding and responding to Defendant's alleged safety concerns. Nor did Defendant ask any questions of the Hinojosas in order to gain information about his abilities or needs.

59. In sum, GST staff did not make a good-faith effort of any kind to engage in any interactive process involving the sharing or gaining of information. They did not even talk to Mr. Hinojosa himself. They called his wife to relay their decision not to hire him because he is deaf.

60. Therefore, GST's conduct amounts to a discriminatory refusal to provide accommodation in an interview, the disparate treatment of refusing to interact directly with Mr. Hinojosa as they would have with a hearing applicant, and the ultimate discriminatory treatment of refusing to hire or even interview him.

61. Critically, GST did not perform an individualized assessment of any direct threat it now claims Mr. Hinojosa posed, but relied on harmful stereotypes that a deaf driver would not be safe—without even looking at Mr. Hinojosa's decades of safe driving—and that a deaf driver would be unable to communicate with hearing passengers, despite Mr. Hinojosa's extensive skills and history of communicating with both deaf and hearing persons in a variety of contexts.

## CAUSES OF ACTION

### VIOLATIONS OF THE AMERICAN WITH DISABILITIES ACT

62. Plaintiff re-alleges each and every allegation of Paragraphs 1 through 61.

63. Deafness is a physical impairment that substantially limits Mr. Hinojosa's ability to hear and speak. At all relevant rimes, Mr. Hinojosa has been a person with an "actual" disability,

a "record of" disability, and a person "regarded as" having disability as defined by the ADA Amendments Act of 2008, 42 U.S.C. § 12102(1).

64. Plaintiff was able to perform the essential functions of the job he sought with, or without, reasonable accommodation. In other words, he was "otherwise qualified" for the job. He met all of the requirements for the position, and was more qualified than those hired for this job.

65. The ADA prohibits discrimination by an employer against a qualified individual with a disability in the terms, conditions and privileges of employment. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4. GST treated Mr. Hinojosa differently by, because of his deafness, refusing to accept his application, failing to communicate directly with him, refusing him an interview, and failing to hire him.

66. The ADA defines discrimination as, inter alia, not making reasonable accommodations to an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9. GST failed to accommodate Mr. Hinojosa's obvious disability in failing to provide the accommodation during the interview process. 29 C.F.R. § 1630.2(o)(1)(i). GST also refused to provide the reasonable accommodations requested by Mr. Hinojosa that would have enhanced his workplace performance.

67. Among other things, the ADA defines reasonable accommodations as including modifications or adjustments to the work environment or to how the job position is performed. 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(1)(ii). Defendant refused to allow, or even consider, any of the many modifications listed above.

68. Reasonable accommodation may also include the acquisition or modification of equipment or devices. See EEOC commentary to 1630.2(o) ("It may also be a reasonable accommodation to permit an individual with a disability the opportunity to provide and utilize

equipment, aids or services that an employer is not required to provide as a reasonable accommodation."). Though Plaintiff wished to discuss his ability to use additional equipment that he could provide, Defendant refused.

69. Reasonable accommodation is also defined to include the provision of interpreters. 29 C.F.R. § 1630.2(o)(2)(ii). This is an extremely common accommodation for deaf employees, who often use interpreters at key meetings involving important safety or human resources topics. Defendant refused to consider it, even cancelling the application process, rather than properly interviewing Mr. Hinojosa.

70. Critically, once an employee requests an accommodation, the employer must engage in an interactive process with the employee to identify the precise limitation resulting from the disability and identify accommodations that overcome those limitations. 29 C.F.R. § 1630.2(o)(3). In this case, the employer flatly refused to engage.

71. This refusal to begin a discussion about accommodation was particularly egregious because Defendant failed to communicate with Mr. Hinojosa, the person with the information they ought to have considered. It was made even more egregious by their apparent decision to rely on a higher-up for the flat denial and to use their only communication as an opportunity to relay a predetermined decision.

72. As a result, although the ADA requires that the interactive process "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations," 29 C.F.R. § 1630.2(o)(3), Defendant had no communication with Mr. Hinojosa about his accommodation needs. Defendant was unaware of the precise limitations of Mr. Hinojosa's hearing, and of his ability to use hearing aids and significant abilities to communicate with hearing persons.

73. To the extent Defendant has a policy or rule against the hiring of deaf persons in general or for particular positions, it has violated the portion of the ADA that forbids the "qualification standards, employment tests or other selection criteria" that have the effect of screening out individuals with a disability unless the employer shows that the standards, tests or criteria, are actually used for a job-related purpose and consistent with business necessity. 42 U.S.C. § 12112(b)(6). In other words, Defendant discriminated against Plaintiff in violation of the ADA when Defendant ignored Plaintiff's successful work history and instead relied on hearing requirements that were not necessary, and relied on inaccurate and harmful stereotypes, to determine Plaintiff was unqualified for the position that he sought.

74. Perhaps most critically, the ADA requires that an employer determining that hiring a person with disability will pose a direct threat to carefully consider whether the risk of substantial harm cannot be reduced or eliminated by reasonable accommodation. 29 C.F.R. § 1630.2(r). The law requires such an employer to perform a thorough and "individualized assessment of the individual's present ability to safely perform the essential functions of the job." Defendant never made such an individualized assessment, and did not in any sense rely on the "best available objective evidence." *See id.*

75. In sum, Defendant discriminated against Plaintiff in violation of the ADA when it refused to offer to accommodate an obvious disability in the application process, refused to provide requested accommodations, refused to engage in an interactive process to arrive at appropriate workplace accommodations, relied upon a policy or standard with respect to applicants with hearing loss that was not necessary and that has a discriminatory impact on those applicants, refused to communicate with a disabled applicant directly or to accept his written application, refused to interview him, and refused to hire him because he is deaf.

76. Finally, if it is the case that GST decided to terminate the application process because of Mr. Hinojosa's request for accommodation, this form of retaliation is also specifically prohibited under the ADA. 29 C.F.R. § 1630.12. And to the extent Defendant decided not to hire him because of his need for accommodation itself, this is also violative of the law. 29 C.F.R. § 1630.9.

## SECOND CAUSE OF ACTION: TEXAS LABOR CODE CHAPTER 21

77. Mr. Hinojosa repeats and re-alleges the allegations in the above paragraphs and incorporates them by reference.

78. Mr. Hinojosa brings this cause of action in a timely fashion under Chapter 21 of the Texas Labor Code. TEX. LAB. CODE § 21.001, et seq.

79. At all relevant times, Mr. Hinojosa was a qualified individual with a disability under the terms of Chapter 21 of the Texas Labor Code. Mr. Hinojosa is a person with an actual disability and a person with a record of a disability. Defendant also regarded Mr. Hinojosa as having a disability. *Id.* § 21.002(6).

80. At all relevant times, Mr. Hinojosa was qualified for the job with Defendant, as he was able, with or without accommodation, to perform the essential functions of the job.

81. GST is an employer within the meaning of Chapter 21 of the Texas Labor Code because it is engaged in an industry affecting commerce and has had at least fifteen or more employees for each working day in each of twenty or more calendar weeks of the calendar year preceding this filing. *Id.* § 21.002(8)(A).

82. GST knew about Mr. Hinojosa's disability and the limitations associated with his disability.

83. An employer violates the Texas Labor Code if, because of disability, the employer (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee. *See id.* § 21.051.

84. Section 21.128 of the Texas Labor Code provides that it is an unlawful employment practice for a covered employer to fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability who is an employee. Section 21.055 of the Texas Labor Code prohibits the retaliation against a person who opposes a discriminatory practice, as did Plaintiff.

85. GST violated the Texas Labor Code when it failed to make reasonable accommodations for Mr. Hinojosa's disability as detailed above. It further violated the law to the extent it adopted a policy with regard to hearing loss not justified by necessity that adversely impacts persons with hearing disabilities. And most critically, it failed to engage with him in an interactive process in good faith, retaliated by shutting down the application process when he pressed for accommodation, and refused to communicate with him, interview him, or hire him because he is deaf.

## CONDITIONS PRECEDENT AND RELIEF SOUGHT

86. The above-described unlawful employment practices caused Plaintiff to lose the benefits of employment and wages and other benefits, and he has suffered distress, suffering, inconvenience, and other pecuniary and nonpecuniary losses.

87. More specifically, because of GST's violations of the ADA and the Texas Labor Code, Mr. Hinojosa has suffered damages for which he must be compensated, including back pay, interest on back pay, front pay, and future pecuniary losses, along with emotional distress, inconvenience, and lost opportunity for advancement. Mr. Hinojosa is also entitled to attorneys' fees and expert fees and to equitable relief in the form of an injunction prohibiting GST from engaging in unlawful employment practices, including disability-based discrimination. Further equitable relief is sought in order to require GST to offer Mr. Hinojosa work as a driver and to ensure his lawful accommodation in that role.

88. Defendant committed the acts described herein intentionally, with reckless indifference to the Plaintiff's legal rights, with malice and with gross misjudgment. GST's conduct was undertaken in true and blatant disregard for Mr. Hinojosa's rights under federal and state law.

89. Finally, Mr. Hinojosa has met all conditions and requirements precedent to this lawsuit. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about November 14, 2023, within 180 days of the occurrence of the acts of which he now complains. The EEOC issued its Dismissal and Notice of Right to File a Civil Action ("Notice") on February 25, 2025. This filing is within 90 days of Plaintiff's receiving the Notice from the EEOC.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury.

## PRAYER

WHEREFORE Plaintiff Rogelio Hinojosa requests that the Defendant be cited to appear and answer and that Plaintiff be awarded:

a. Injunctive relief as described above;

    b.    Back pay;

    c.    Reinstatement and/or front pay as appropriate;

    d.    Compensatory damages;

    e.    Punitive damages;

    f.    Pre- and post-judgment interest;

    g.    Costs, litigation expenses, expert witness fees, and reasonable attorneys' fees; and

    h.    Any further relief to which he may by justly entitled.

Dated: May 15, 2025.

Respectfully submitted,

*/s/ Fraser M. Holmes*
Fraser M. Holmes
State Bar No. 24110015
HICKS JOHNSON PLLC
700 Louisiana St., Suite 2650
Houston, Texas 77002
Tel: 713.357.5150
Fax: 713.357.5160
fholmes@hicksjohnson.com

Lucy D. Wood*
***admission *pro hac vice* forthcoming**
Texas Bar No. 24013780
Texas Law Disability Rights Clinic
727 East Dean Keeton Street
Austin, TX 78705
(512) 626-2060
lwood@law.utexas.edu

Ted Evans
Texas Bar No. 24099351
Disability Rights Texas
1420 W. Mockingbird Lane, Ste. 450
Dallas, Texas 75247
(832) 681-8224 (phone)
(214) 630.3472 (fax)
tevans@disabilityrightstx.org

**ATTORNEYS FOR PLAINTIFF**