## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| ROGELIO HINOJOSA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | No. 1:25-cv-00740-ADA-SH |
| § | |
| STA, INC. D.B.A. GOLDSTAR § | |
| TRANSIT INC. § | |
| § | |
| Defendant. § | |

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS**

NOW COMES Plaintiff Rogelio Hinojosa ("Plaintiff"), who respectfully submits this Response and Memorandum in Opposition to Defendant Student Transportation of America, Inc. d/b/a Goldstar Transit, Inc.'s ("Goldstar" or "Defendant") Rule 12(b)(6) Motion to Dismiss ("Motion").

**INTRODUCTION**

This case presents a clear example of the very stereotyping the Americans with Disabilities Act ("ADA") and Texas Commission on Human Rights Act ("TCHRA") were designed to eliminate. Despite Mr. Hinojosa's impeccable five-year safety record transporting students and explicit state authorization through medical waivers, Goldstar categorically rejected him based solely on disability-based assumptions—precisely the conduct Congress sought to prohibit.

The Motion fails on five fundamental grounds. First, Mr. Hinojosa is qualified, possessing all required credentials including state-issued medical waivers and five years of exemplary school bus driving experience with zero safety incidents. Even if additional certification were needed before Mr. Hinojosa could drive a school bus for Bastrop Independent School District ("BISD"),

he has already satisfied three of the five requirements under the Texas Administrative Code for obtaining additional medical waivers, leaving only two ministerial requirements remaining: a written request for special consideration and a letter from the prospective employer. This creates an impossible catch-22 where Goldstar denies employment for lacking a license that requires their own endorsement. Second, Goldstar fundamentally misinterprets Texas law in a manner that would create an unlawful restriction limiting deaf drivers to serving only deaf students—a reading that contradicts statutory language and both the ADA's and TCHRA's core principles. Third, the cases Goldstar cites are distinguishable and involved different procedural postures with fully developed factual records. Fourth, Goldstar cannot use the affirmative defense of direct threat to support dismissal under Rule 12(b)(6), particularly where Plaintiff's Original Complaint, ECF 1, at 5 ("Complaint") alleges facts directly contradicting any safety concerns and establishes that Goldstar failed to conduct the required individualized assessment. Finally, all administrative remedies are properly exhausted.

However, while Plaintiff maintains all federal claims, he voluntarily dismisses his state law retaliation claim as inconsistent with current Texas precedent.

## FACTUAL BACKGROUND

As alleged, Mr. Hinojosa possesses strong qualifications that demonstrate his fitness for the position. He holds a Class B Commercial Driver's License and a current Medical Examiner's Certificate issued in May 2023. Comp. ¶¶ 26-27. Most critically, he obtained a Medical Waiver for hearing from the Texas Department of State Health Services' Medical Advisory Board, issued August 28, 2023. *Id.* ¶ 27.

His five years as a school bus driver for the Texas School for the Deaf since 2017 speaks volumes—*zero accidents, zero safety incidents. Id.* ¶¶ 24-25. Mr. Hinojosa began working as a

Bus Monitor at TSD, where he ensured the safety and comfort of students, before transitioning to driver responsibilities approximately five years ago. *Id.* ¶ 24. Throughout his professional driving career, "he has never been in a motor accident" and "has never caused an accident in his private life as a driver, either." *Id.* ¶ 25.

Despite these qualifications and proven safety record, Goldstar refused to hire him based solely on his disability, making no individualized assessment of his abilities.

## STANDARD FOR RULE 12(b)(6) MOTIONS

A complaint survives Rule 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007).

Critically, courts must distinguish between factual allegations and legal conclusions. While the Court need not accept legal conclusions, it must accept well-pleaded factual allegations. *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a probability requirement—the complaint need not establish that the plaintiff will ultimately prevail. Rather, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555-56.

## ARGUMENT

**I.      Mr. Hinojosa Has Adequately Pled That He Is Qualified.**

To establish a prima facie case under the ADA and the TCHRA, a plaintiff must demonstrate: (1) he has a disability; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision because of his disability. *EEOC v. LHC Group, Inc*., 773 F.3d 688,

697, 701-02 (5th Cir. 2014).[1] A qualified individual with a disability is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The determination of whether an individual is "qualified" under the ADA involves a two-fold inquiry: (1) whether the individual meets the necessary prerequisites for the job, such as education, experience, skills, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation. 29 C.F.R. § 1630.2(m); *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1111-1112 (8th Cir. 1995).

a. *Mr. Hinojosa Pled That He Meets All Necessary Prerequisites for the Position.*

The first inquiry focuses on threshold requirements that employers legitimately impose for all candidates. Accordingly, courts examine whether the plaintiff possesses the basic qualifications for the position, such as "appropriate educational background, employment experience, skills, licenses, etc." *LHC Group, Inc.*, 773 F.3d at 697.

The Complaint alleges specific facts about how Mr. Hinojosa meets the necessary prerequisites: he holds a Class B Commercial Driver's License, Compl. ¶ 26, has been deemed medically fit to operate commercial motor vehicles, *id.*, and obtained a Medical Examiner's Certificate and Medical Waiver for hearing from the Texas Department of State Health Services' Medical Advisory Board establishing his eligibility to operate a school bus in Texas, *id.* ¶ 27. These licensing and certification requirements represent the fundamental prerequisites for school bus driver positions in Texas.

---

[1] "Because TCHRA was modeled after federal civil rights law and is intended to coordinate state law with federal law in employment discrimination cases, the Texas Supreme Court interprets TCHRA in light of federal law and the cases interpreting that law." *Lloyd v. Birkman*, 127 F.Supp.3d 725, 745 n.5 (W.D. Tex. 2015) (citing *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 308 (Tex. 2010)). "Because the TCHRA 'parallels the language of the [ADA]" the Fifth Circuit "follow[s] ADA law in evaluating" TCHRA disability discrimination claims. *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 445-46 (5th Cir. 2018) (per curiam) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285-87 (5th Cir. 2004)).

The Complaint further alleges Mr. Hinojosa's extensive relevant experience. He "began his employment as a professional driver for Domino's in 2015," then "began working as a Bus Monitor at TSD" in 2017, and has "worked as a school bus driver at TSD" for approximately five years. *Id.* ¶ 24. When completing Goldstar's application, he indicated "that he had had at least three years of driving experience, and that he did not have any failed drug tests, license suspensions, or convictions related to dangerous driving." *Id.* ¶ 49.

Significantly, Mr. Hinojosa's Medical Waiver was issued pursuant to Texas Transportation Code § 521.022(g), which "provides an exemption for otherwise qualified individuals with hearing disabilities to be licensed, certified, and employed as school bus operators." This statutory framework demonstrates that Texas law specifically recognizes deaf individuals as capable of meeting school bus driver prerequisites under appropriate circumstances.

The first step is clearly satisfied where the plaintiff possesses all required licenses, certifications, years of relevant experience, and maintains a clean driving and employment record that meets the employer's stated job-related requirements.

> b. *Mr. Hinojosa Can Perform Essential Functions With and/or Without Accommodation.*

The second step involves a two-part inquiry: (1) can the individual, unaided, perform the essential functions, and, if not, (2) will some reasonable accommodation by the employer enable the employee to perform those functions? *Chandler v. City of Dallas*, 2 F.3d 1385, 1393–1394, (5th Cir. 1993).

Prior work history provides powerful support that a person is a qualified individual under the ADA. *See, e.g.*, *Garibay v. Hamilton Cnty.*, 496 F. Supp. 3d 1140, 1151 (E.D. Tenn. 2020); *Drasek v. Burwell*, 121 F. Supp. 3d 143, 159 (D.D.C. 2015); *see also Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 22 (1st Cir. 2004); *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281,

1284 (7th Cir. 1996). Likewise, subsequent similar work is relevant to qualification determinations. *Chalfant v. Titan Distribution, Inc.*, 475 F.3d 982, 990 (8th Cir. 2007); *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 901-902 (8th Cir. 2006); *Holiday v. City of Chattanooga*, 206 F.3d 637, 644–645 (6th Cir. 2000).

Mr. Hinojosa continues to work as a bus driver for TSD, transporting students in a school environment. This position is directly analogous to Goldstar's operation serving the Bastrop County Independent School District. Compl. ¶¶ 20, 24, 36. The Fifth Circuit in *EEOC v. LHC Group* recognized that actual work performance in identical or similar positions provides powerful evidence of qualification. 773 F.3d at 697. Mr. Hinojosa's current work at TSD involves operating school buses that "sometimes transport children who have not yet developed signed language or who use speech to communicate," demonstrating his ability to safely manage diverse student populations with varying communication needs. Compl. ¶ 29.

Most significantly, the Complaint alleges he "has never been in a motor accident" during his professional driving career and "has never caused an accident in his private life as a driver, either." *Id.* ¶ 25. This exceptional safety record across multiple years of professional school bus operation provides compelling evidence that communication limitations do not impair his ability to perform the core safety functions of student transportation, establishing his capacity to perform essential functions *without accommodation.*

To the extent that accommodation were necessary, Mr. Hinojosa suggested proven accommodation strategies from his current employment that would enable him to perform essential functions successfully at Goldstar. *Id.* ¶ 52. Throughout his tenure at TSD, Mr. Hinojosa has successfully transported students every day using various communication methods including stomping, flashing lights, whiteboards, and speech-to-text technology. Compl. ¶¶ 29-32. TSD

provides smartphones to its bus drivers for real-time voice-to-text transcription and directs drivers to pull over and respond to urgent messages at stops, showing that allowing "communication stops" enhances both communication and safety. *Id.* ¶¶ 32–33. TSD also uses tablets with GPS functionality that allow Mr. Hinojosa to check students in and out while providing location tracking to parents, reducing the need for driver-to-parent verbal communication. *Id.* ¶ 34. Additionally, the use of bus monitors to assist with communication is a common accommodation strategy, as many school districts assign monitors to certain buses for special education needs. *Id.* ¶ 35.

These requests represented proven accommodation strategies from his current employment that would enable him to perform essential functions successfully at Goldstar, demonstrating both his qualification and his proactive approach to ensuring effective job performance with accommodation.

When applying to Goldstar, Mr. Hinojosa proactively submitted a comprehensive accommodation request because he was unfamiliar with Goldstar's or BISD's specific policies and procedures. *Id.* ¶ 52. Having successfully used various assistive technologies and communication methods at TSD, he proposed that Goldstar allow him to continue using the same technologies and methods, including permission to check his phone while stopped for work communication, extra time at certain stops if necessary, interpreters during meetings, use of text and email for communication, temporary assignment of someone to ride with him when learning new routes, and permission to use printed information and dry erase boards. *Id.* These requests represented proven accommodation strategies from his current employment that would enable him to perform essential functions successfully at Goldstar, demonstrating both his qualification and his proactive approach to ensuring effective job performance *with accommodation*.

## II.　Defendant Misunderstands State Law

Defendant's *only* basis for its conclusion that Plaintiff cannot possibly prove he is qualified is its mistaken understanding of state law. A correct reading of the statute makes clear that the issue of qualification is an issue of fact that must be resolved at trial following discovery.

Goldstar fundamentally misreads 37 Tex. Admin. Code § 14.13(c), which states:

> In accordance with Texas Transportation Code, § 521.022(g), the department *will grant* a medical waiver to an *otherwise qualified* person with a hearing disability allowing that person to serve as a school bus driver when transporting hearing-impaired students.

37 Tex. Admin. Code § 14.13(c) (emphases added).

The regulation creates a mandatory guarantee, not an exclusive limitation. It does not state that hearing-impaired drivers "may only" drive for hearing-impaired students—it guarantees they "will" receive waivers for that specific purpose. Thus, subsection (c) guarantees that hearing-impaired drivers will receive waivers for hearing-impaired student transport, but does not preclude them from obtaining waivers for general school bus driving through the standard process.

Similarly, Texas Transportation Code § 521.022(g) explicitly provides its general licensure regime "does not affect the *right* of an otherwise qualified person with a hearing disability to be licensed, certified, and employed as a bus operator for vehicles used to transport hearing-impaired students." Tex. Transp. Code § 521.022(g) (emphasis added). The statute uses the word "right," indicating protected status, not restricted status. *See Rasul v. Bush*, 542 U.S. 466, 481 (2004); *see also Right*, Webster's Third New International Dictionary 1948 (1993) (defining "right" as "something to which one *has a just claim*" or "the *power or privilege* to which one is justly entitled" (emphases added)). Goldstar's interpretation would transform protective language into exclusionary language, contrary to basic principles of statutory construction and the ADA's anti-discrimination mandate.

To the extent that Goldstar argues that Mr. Hinojosa needed additional certification before driving a school bus for BISD, Mr. Hinojosa pled facts that, if true, show that he satisfied three of the five requirements under 37 Tex. Admin. Code § 14.13(a)(3). First, he possesses a current Medical Examination Report for Commercial Driver Fitness Determination, as evidenced by his Medical Examiner's Certificate with an expiration date of May 26, 2024. Compl. ¶ 27. Second, the Texas Medical Advisory Board Release Authorization appears to have been completed, as the August 28, 2023 waiver letter explicitly references that his request was granted "based on the recommendation of the Texas Department of State Health Services' Medical Advisory Board," indicating the required authorization and review process occurred. *Id.* Third, the regulation's requirement for letters containing medical opinions and records from examining physicians has been fulfilled, as demonstrated by the Medical Advisory Board's recommendation that formed the basis for his current waiver. *Id.*

Accordingly, only two administrative requirements remain: a written request for special consideration and a letter from the prospective employer—the latter of which Goldstar refused to provide while simultaneously claiming Mr. Hinojosa was unqualified for the position. This creates an impossible catch-22: Goldstar denies employment for lacking certfication that can only be obtained with Goldstar's own endorsement. Compl. ¶¶ 53-61.

Goldstar even acknowledges that with a "submission of a letter from the prospective employer for whom the individual would work if the request were granted," a person with a disability may obtain a waiver to drive a school bus. Def.'s Mot. Dismiss, ECF 6, at 8 (citing 37 Tex. Admin. Code § 14.13(a)(3)). In so stating, Defendant acknowledges that the general waiver process is specifically designed for situations where people with disabilities seek employment with employers serving general populations. This interpretation reveals the perverse logic of Goldstar's

position: an employer could deny someone for purportedly neutral licensing reasons while controlling whether that person can ever obtain the required license. If hearing-impaired drivers could only work for employers serving hearing-impaired students, there would be no purpose for requiring a prospective employer letter in the general waiver process.

### III.     Direct Threat Cannot Support Dismissal under Rule 12(b)(6).

To the extent Goldstar's categorical rejection of Mr. Hinojosa was based on safety concerns about deaf drivers generally, any such argument fails because direct threat is an affirmative defense that Goldstar bears the burden to prove. *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 78 (2002) (describing direct threat as "part of an affirmative defense"); *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571-72 (8th Cir. 2007).

Goldstar cannot use this affirmative defense to support dismissal under Rule 12(b)(6). The Complaint adequately alleges that Mr. Hinojosa is qualified and can perform the job safely—he has five years of accident-free school bus driving experience, Compl. ¶¶ 24-25, and valid state medical certification authorizing his work, *id.* ¶ 27. These allegations, accepted as true, establish his qualification for pleading purposes.

The Complaint further alleges facts that directly contradict any potential direct threat argument. Mr. Hinojosa has "never been in a motor accident" during his years of professional driving and "has never caused an accident in his private life as a driver, either." *Id.* ¶ 25. He holds valid medical certification specifically authorizing school bus operation. *Id.* ¶ 27. These factual allegations, which must be accepted as true, demonstrate his ability to perform the job safely.

Even if Goldstar could raise direct threat arguments at this stage—which it cannot—such determinations require extensive factual development inappropriate for a motion to dismiss. Direct threat analysis requires "an individualized assessment of the individual's present ability to safely

perform the essential functions of the job" based on "objective, factual evidence." 29 C.F.R. § 1630.2(r); *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 763 (5th Cir. 1996) (finding question of fact existed as to direct threat where hearing-impaired individual could safely drive school bus).

Courts consistently recognize that direct threat is "a fact-intensive matter usually left to jury" and "often a fact question for the jury." *Rizzo*, 84 F.3d at 764; *Justice v. Crown Cork and Seal Co., Inc.*, 527 F.3d 1080, 1091-92 (10th Cir. 2008). The Complaint's allegations of Mr. Hinojosa's exemplary safety record and proven communication abilities create factual disputes that preclude resolution at the pleading stage.

The Complaint alleges that "Goldstar did not perform an individualized assessment of any direct threat it now claims Mr. Hinojosa posed, but relied on harmful stereotypes that a deaf driver would not be safe—without even looking at Mr. Hinojosa's decades of safe driving." Compl. ¶ 61. This allegation establishes that Goldstar failed to conduct the individualized assessment required for any valid direct threat determination, making their rejection based on categorical assumptions rather than objective evidence.

Goldstar cannot now claim Mr. Hinojosa posed a direct threat when their own conduct—as alleged in the Complaint—shows they made no effort to assess his actual abilities or safety record.

## IV. The Cases Goldstar Cites Are Distinguishable and Cannot Support Dismissal

The cases Goldstar relies upon are factually distinguishable from the present circumstances and fail to address the controlling Fifth Circuit standard established in *Williams v. J.B. Hunt Transport, Inc*. Moreover, these cases involved fundamentally different procedural postures with

fully developed factual records that permitted resolution without the liberal notice pleading analysis required under Rule 12(b)(6).

*Williams v. J.B. Hunt Transport, Inc.* provides the binding authority in this Circuit and establishes a clear, limited test for when lack of certification defeats ADA qualification. 826 F.3d 806, 812 (5th Cir. 2016). Under *Williams*, a plaintiff fails to establish qualification under the ADA only when two specific elements are present: (1) a physician has rescinded the plaintiff's DOT certification, and (2) the plaintiff has not sought administrative review under 49 C.F.R. § 391.47. *Id.* The court's holding was limited to situations involving affirmatively rescinded certification combined with failure to pursue available administrative remedies.

Here, Mr. Hinojosa obtained his certification through the legitimate regulatory process provided by Texas law. Unlike *Williams*' plaintiff who failed to pursue administrative remedies, Mr. Hinojosa followed proper administrative procedures and obtained valid state certification for his disability.

*Turner v. BNSF Railway Co*. involved a motion for judgment on the pleadings under Rule 12(c) *after discovery had been completed*, not a Rule 12(b)(6) motion based solely on pleadings. No. 4:23-CV-00681-P, 2023 WL 9052248, at *1 (N.D. Tex. Dec. 22, 2023). The *Turner* court had the benefit of a fully developed factual record establishing through discovery that the plaintiff had definitively failed multiple examinations and had not sought administrative review. *Id.* at *4.

*Bibbs v. Motiva Enterprises LLC* involved summary judgment with undisputed expert medical evidence unavailable at the motion to dismiss stage. 757 F. Supp. 3d 726, 745 (E.D. Tex. 2024). Most importantly, *Bibbs* involved expert medical testimony that the plaintiff could not perform essential job functions. *Id.* at 732. Here, Mr. Hinojosa's five-year performance record

provides factual evidence that he can perform the essential functions—making *Bibbs* irrelevant to the current motion.

In *Martin v. Cunningham Children's Home*, the plaintiff "acknowledged in her complaint that her treating psychiatrist did not write the letter that she needed" for her pre-employment medical screening, and the employer properly rescinded a conditional job offer when she could not complete the screening process. 2010 WL 1241819, at *3 (C.D. Ill. Mar. 22, 2010). By contrast, Mr. Hinojosa "obtained a Medical Examiner's Certificate and a Medical Waiver for hearing (Certificate Number: 00981) from the Texas Department of State Health Services' Medical Advisory Board, which establishes his eligibility to operate a school bus within the State of Texas." Compl. ¶ 27. Moreover, he "holds a Class B Commercial Driver's License (Texas Driver's License No. 13236289) and has been deemed medically fit to operate commercial motor vehicles." *Id.* ¶ 26. Where *Martin* involved an employer's permissible rescission of a conditional offer after medical screening failure, this case involves an employer's refusal to even interview a fully certified applicant, as "Mr. Hinojosa was never afforded an interview" despite completing "all the paperwork he was given by the Defendant." *Id.* ¶¶ 45, 49.

Plaintiff alleges current qualification and valid medical certification—allegations that must be accepted as true at this stage of the proceedings. *Twombly*, 550 U.S. at 570. The types of factual determinations that supported dismissal in *Turner*, *Williams*, and *Bibbs* are precisely the determinations inappropriate for resolution at the motion to dismiss stage.

**V.      Plaintiff's EEOC Charge Preserved His Claims.**

Defendant's exhaustion arguments are unpersuasive and should be rejected. Under well-established Fifth Circuit precedent, the judicial complaint may cover discrimination reasonably related to the allegations of the EEOC charge and that could reasonably be expected to grow out

of an EEOC investigation. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273-74 (5th Cir. 2008); *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

The Fifth Circuit has consistently held that claims are sufficiently exhausted when they fall within "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996). This principle applies equally across circuits. *See Clockedile v. New Hampshire Dep't of Corr.*, 245 F.3d 1, 5 (1st Cir. 2001) (allowing retaliation claim not presented to EEOC where "reasonably related" to filed charges); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686-87 (2d Cir. 2001) (same).

For purposes of this standard, claims are alike or reasonably related when there is a factual relationship between them: "This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Id.* Courts consider factors including: the alleged basis of the discrimination; dates of discriminatory acts alleged; perpetrators named in the EEOC charges; and the locations at which the discrimination is alleged to have occurred. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).

   a. *Mr .Hinojosa's Retaliation Claims Are Exhausted.*

Here, Mr. Hinojosa's EEOC charge detailed his application for employment with Goldstar, his disclosure of his hearing disability, his request for accommodations, and Goldstar's rejection of his application. Compl. ¶¶ 38-58. Any reasonable EEOC investigation of these allegations would necessarily cover both accommodation and retaliation claims, as they arise directly from the same operative facts and involve the same parties—Mr. Hinojosa and Goldstar.

Requesting an accommodation is protected activity under the ADA. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316-17 n.3 (5th Cir. 2007); *Wright v. CompUSA, Inc.*, 352 F.3d 472,

477-78 (1st Cir. 2003); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998). The fact that requesting an accommodation constitutes protected activity is well-established and confirmed by EEOC guidance. *See* EEOC Compliance Manual § 8: Retaliation n.15 (1998).

Mr. Hinojosa's EEOC charge detailed his accommodation request on June 6, 2023. Compl. ¶ 52. Goldstar rejected his application just two days later on June 8, 2023. *Id.* ¶¶ 56-58. This close temporal proximity establishes the causal connection element. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (seven weeks sufficiently close in time).

The charge describes the same conduct and implicates the same individuals alleged in the Complaint. Mr. Hinojosa's charge identifies Goldstar, describes his application process including his June 5, 2023 interview, Compl. ¶ 42, details his accommodation request, and alleges Goldstar's rejection of his application. These factual allegations provide sufficient notice for the EEOC to investigate both accommodation and retaliation claims arising from the same discriminatory course of conduct.

Critically, the Fifth Circuit has recognized that retaliation for requesting accommodations "can reasonably be expected to grow out of" an EEOC investigation into the underlying discrimination. *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Unit A Aug. 1981) (noting that requiring separate charges for retaliation would serve no purpose when the acts arise from the same factual nexus).

> b. *Mr. Hinojosa's Failure to Accommodate During Interview Process Claims Are Exhausted.*

Defendant's argument that Mr. Hinojosa failed to exhaust his claim regarding failure to accommodate during the interview process is similarly flawed. The Complaint alleges that Goldstar failed to provide a sign language interpreter during the interview process and failed to

engage in the interactive process. Compl. ¶¶ 46-47, 58-60, 66, 75. These claims arise from the same factual circumstances detailed in his EEOC charge.

Specifically, the Complaint alleges that on June 5, 2023, Mr. Hinojosa attended an interview at Goldstar's office where he disclosed his deafness and need for accommodations. *Id.* ¶¶ 40-44. The interview process itself was part of the application process that Mr. Hinojosa detailed in his EEOC charge. *Id.* ¶ 42. The Complaint further alleges that Goldstar made no effort to engage in an interactive process or provide accommodations during this interview. *Id.* ¶¶ 46-47, 58-59.

An EEOC investigation into Goldstar's rejection of Mr. Hinojosa's application based on his disability would reasonably cover examination of the entire application process, including the interview where he disclosed his disability and requested accommodations. The failure to accommodate during the interview is not a separate discriminatory act but rather part of the same course of conduct that led to his rejection—Goldstar's refusal to engage with his disability and accommodation needs from the outset.

Moreover, the alleged failure to provide an interpreter during the interview directly relates to Goldstar's ultimate decision to reject his application. The Complaint alleges that Goldstar's staff "did not make a good-faith effort of any kind to engage in any interactive process involving the sharing or gaining of information" and "did not even talk to Mr. Hinojosa himself." *Id.* ¶ 59. This conduct during the interview process is inextricably linked to the discriminatory rejection that formed the basis of his EEOC charge. Goldstar's failure to engage in the interactive process throughout the application period shows a unified course of discriminatory conduct that would naturally be within the scope of any EEOC investigation into his rejected application.

### VI. Plaintiff Voluntarily Dismisses His State Law Retaliation Claim

Pursuant to Federal Rule of Civil Procedure 41(a)(2), Plaintiff respectfully moves to dismiss his TCHRA retaliation claim without prejudice. Under *Texas Department of Transportation v. Lara*, 625 S.W.3d 46, 60-61 (Tex. 2021), requesting a reasonable accommodation, without more, does not constitute protected activity under the TCHRA's retaliation provision. The protected conduct must "alert the employer to the employee's reasonable belief that unlawful discrimination is at issue." *Id.* at 61.

The Complaint does not allege that Mr. Hinojosa had a reasonable belief that Goldstar was already discriminating against him when he requested accommodations during the application process. Rather, his accommodation request appears to have been made proactively. Compl. ¶ 52. Accordingly, his TCHRA retaliation claim cannot proceed under current Texas law.

This dismissal is without prejudice to Plaintiff's federal ADA claims, which remain viable under the broader federal standard for protected activity. *See Jenkins*, 487 F.3d at 316-17 n.3 (5th Cir. 2007).

### CONCLUSION

This case strikes at the heart of the ADA's purpose—preventing employers from making hiring decisions based on stereotypes rather than individualized assessments of qualified individuals with disabilities.

The factual record could not be clearer: Mr. Hinojosa has five years of accident-free school bus driving, state-issued medical waivers authorizing his work, and detailed accommodation proposals that would enable him to work safely for Goldstar. Against this record, Goldstar offers only categorical assumptions about deaf drivers—exactly the stereotypical thinking the ADA prohibits.

Goldstar's motion should be denied because:

- The Complaint adequately pleads that Mr. Hinojosa is a qualified individual with proper credentials and proven ability;

- Complex issues surrounding essential job functions, reasonable accommodations, and licensing requirements require factual development through discovery inappropriate for Rule 12(b)(6);

- Goldstar's interpretation of Texas law would create an unlawful restriction limiting deaf drivers contrary to statutory language and ADA principles;

- All claims are properly exhausted under Fifth Circuit precedent; and

- Goldstar's categorical rejection without individualized assessment violates the ADA's core mandate against disability-based stereotyping.

In the alternative, should this Court find any deficiencies in the pleadings, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.

Dated: June 20, 2025

Respectfully submitted,

*/s/ Lucy Wood*
LUCY D. WOOD (pro hac vice mot. forthcoming)
Texas Bar No. 24013780
Texas Law Disability Rights Clinic
727 East Dean Keeton Street
Austin, TX 78705
Phone: (512) 626-2060
Email: lwood@law.utexas.edu

Fraser Holmes
Texas Bar No. 24110015
Hicks Johnson PLLC
700 Louisiana Street, Suite 2650
Houston, Texas 77002
Phone: (713) 357-5150
Email: fholmes@hicksjohnson.com

Ted Evans
State Bar No. 24099351
tevans@disabilityrightstx.org
DISABILITY RIGHTS TEXAS
2222 W Braker Ln.
Austin, TX 78758
(832) 681-8224

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

    I hereby certify that on June 20, 2025, a true and correct copy of the foregoing document was served on all counsel via the court's electronic filing system.

*/s/ Fraser M. Holmes*
Fraser M. Holmes
